1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIENPHUONG TI HO,

           Plaintiff,

      v.

THE CITY OF LONG BEACH,

PUBLIC WORKS, et al.

          Defendants.

Case No.  2:19-cv-09430-DOC-KES

REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE

     This Report and Recommendation ("R&R") is submitted to the Honorable David O. Carter, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

1

# I.

## INTRODUCTION

On November 1, 2019, VienPhuong Ti Ho ("Plaintiff"), the owner of real property located at 732 Harding Street in Long Beach, filed a Complaint (Dkt. 1) against:

- Din Pho and Maly Oum, a husband and wife who own neighboring property at 716 Harding ("the Neighbors");
- Neda Roshanian ("the Neighbors' Attorney");
- the City of Long Beach ("the City"), including its Public Works Department and its Police Department ("LBPD");
- Craig A. Beck, Director of the Public Works Department; and
- Jeffrey Sorrero and Diko Melkonian, representatives of the Public Works Department who visited Plaintiff's property.

(Compl. at 4-6.)  This R&R will collectively refer to the Neighbors and their attorney as "the Neighbor Defendants," and the City and its employees as "the City Defendants."

Plaintiff and the Neighbors dispute the ownership of an alleyway separating their two properties.  Plaintiff contends that she owns the alleyway by virtue of adverse possession, but the Neighbors and the City Defendants contend that the property line runs down the middle of the alley.

On November 12, 2019, Plaintiff moved for a temporary restraining order ("TRO") to prevent Defendants from demolishing structures Plaintiff has built on the contested property and removing Plaintiff's personal property.  (Dkt. 8.)  The Court denied the motion, finding that Plaintiff had failed to demonstrate a likelihood of success on the merits or a likelihood of irreparable harm.  (Dkt. 21.)

Defendants now move to dismiss the Complaint.  The Neighbor Defendants move to dismiss under the California Anti-SLAPP statute, California Code of Civil Procedure section 425.16, as well as for failure to state a claim under Federal Rule

1  of Civil Procedure 12(b)(6).  (Dkt. 22.)  The City Defendants move to dismiss the
2  Complaint for failure to state a claim under Rule 12(b)(6).  (Dkt. 23.)  Plaintiff filed
3  oppositions to the two motions (Dkt. 30, 31) and Defendants filed replies (Dkt. 35,
4  36).

5       For the reasons explained below, it is recommended that the motions to
6  dismiss be **granted in part and denied in part**.  All of Plaintiff's federal claims
7  should be dismissed for failure to state a claim.  However, she should be granted
8  leave to amend some of her federal claims because she is pro se, she has not yet
9  amended the Complaint, and amendment may not be futile.  The Court should
10  address the viability of Plaintiff's state law claims at a future date, if Plaintiff can
11  state a valid federal claim upon which to base federal subject matter jurisdiction.
12  The Court should **deny without prejudice** the Neighbor Defendants' anti-SLAPP
13  motion because it is granting Plaintiff leave to amend.

## II.

## MOTIONS TO DISMISS FOR
## FAILURE TO STATE A CLAIM

17  **A.**  **Legal Standard**

18       A complaint may be dismissed for "failure to state a claim upon which relief
19  can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint may fail to state a claim for
20  two reasons: (1) lack of cognizable legal theory, or (2) insufficient facts under a
21  cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th
22  Cir. 1990) (as amended).  In determining whether a complaint states a claim on
23  which relief may be granted, its allegations of material fact must be taken as true
24  and construed in the light most favorable to plaintiff.  Love v. United States, 915
25  F.2d 1242, 1245 (9th Cir. 1989).

26       Further, where the plaintiff is appearing pro se, the court must construe the
27  allegations of the complaint liberally and must afford the plaintiff the benefit of any
28  doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.

1   1988).  However, the liberal pleading standard only applies to a plaintiff's factual

2   allegations.  "[A] liberal interpretation of a civil rights complaint may not supply

3   essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit

4   Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of

5   Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

6       With respect to a plaintiff's pleading burden, the Supreme Court has held that

7   "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

8   requires more than labels and conclusions, and a formulaic recitation of the

9   elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550

10  U.S. 544, 55 (2007) (internal citations omitted).  "Factual allegations must be

11  enough to raise a right to relief above the speculative level … on the assumption

12  that all the allegations in the complaint are true (even if doubtful in fact)." Id.  In

13  other words, to avoid dismissal for failure to state a claim, "a complaint must

14  contain sufficient factual matter, accepted as true, to state a claim to relief that is

15  plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  "A claim has

16  facial plausibility when the plaintiff pleads factual content that allows the court to

17  draw the reasonable inference that the defendant is liable for the misconduct

18  alleged." Id.

19      Although the scope of review generally is limited to the contents of the

20  complaint, the Court may also consider exhibits submitted with the complaint, Hal

21  Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th

22  Cir. 1990), and "take judicial notice of matters of public record outside the

23  pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

24  Exhibits that contradict the allegations of a complaint may fatally undermine those

25  allegations. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001),

26  amended by 275 F.3d 1187 (2001) (noting that a plaintiff can "plead himself out of

27  a claim by including … details contrary to his claims").

28      If the Court finds that a complaint should be dismissed for failure to state a

1    claim, the Court has discretion to dismiss with or without leave to amend.  Lopez v.

2    Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  Leave to amend should

3    be granted if it appears possible that the defects in the complaint could be corrected,

4    especially if a plaintiff is pro se.  Id. at 1130-31; see also Cato v. United States, 70

5    F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave

6    to amend his or her complaint, and some notice of its deficiencies, unless it is

7    absolutely clear that the deficiencies of the complaint could not be cured by

8    amendment").  However, if, after careful consideration, it is clear that a complaint

9    cannot be cured by amendment, the Court may dismiss without leave to amend.

10   Cato, 70 F.3d at 1005-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083,

11   1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by

12   permitting further amendment" where the "basic flaw" in the pleading cannot be

13   cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir.

14   2002) (holding that "[b]ecause any amendment would be futile, there was no need

15   to prolong the litigation by permitting further amendment").

16   **B.**    **Plaintiff's Legal Theories**

17         Plaintiff argues that the Neighbors' claim to ownership is "fraudulent"

18   because Plaintiff owns the property through adverse possession, and she seeks a

19   declaratory judgment to this effect.  Plaintiff also asserts a number of claims under

20   California common law and federal civil rights statutes.  The gist of these claims is

21   that the City Defendants improperly took the Neighbors' side in a property dispute

22   "rather than advis[ing] the other Defendants to stay away from the property until a

23   court of competent jurisdiction could decide the issues of who actually owned the

24   property."  (Compl. at 12; see also id. at 13 [complaining that "the City of Long

25   Beach Public Works has acted as judge, jury, and executioner against Plaintiff and

26   … deprived Plaintiff of valuable civil rights to redress any rights in a court of

27   competent jurisdiction"]; id. at 14 [alleging that Defendants violated her civil right

28   "to litigate any dispute relative to the property"]; id. at 23 [alleging that Defendants

1    have "a plan to steal the land without going through a Court Jurisdiction"].)

2           The Complaint brings the following thirteen claims:

3       • <u>Claim 1:</u> Violation of Plaintiff's civil rights under 42 U.S.C. § 1983;

4       • <u>Claim 2:</u> Conspiracy to interfere with her civil rights under 42 U.S.C.

5           § 1985;

6       • <u>Claim 3:</u> Neglecting to prevent interference with her civil rights under 42

7           U.S.C. § 1986;

8       • <u>Claim 4:</u> Violation of her equal protection rights under 42 U.S.C. § 1981;

9       • <u>Claim 5:</u> Violation of her property rights under 42 U.S.C. § 1982;

10      • <u>Claim 6:</u> Fraud and negligent misrepresentation under California common

11          law;

12      • <u>Claim 7:</u> To quiet title to the disputed alleyway in Plaintiff's favor under a

13          theory of adverse possession;

14      • <u>Claim 8:</u> Violations of the Racketeer Influenced and Corrupt

15          Organizations Act ("RICO"), 18 U.S.C. § 1961, <u>et</u> <u>seq.</u>;

16      • <u>Claim 9:</u> Civil conspiracy under California common law;

17      • <u>Claim 10:</u> Unjust enrichment under California common law;

18      • <u>Claim 11:</u> Aiding and abetting under California law;

19      • <u>Claim 12:</u> Intentional infliction of emotional distress ("IIED") under

20          California common law; and

21      • <u>Claim 13:</u> Declaratory judgment under 28 U.S.C. § 1692.[1]

22   Although the Complaint mentions other federal statutes and common law theories

23   _____

24   [1] The table of contents lists IIED as Claim 12, but the body of the Complaint omits
     it and refers to the request for declaratory relief as Claim 12.  (<u>See</u> Compl. at 2, 33.)

25   It appears that the section of the Complaint labeled "extreme and outrageous
     conduct," which is not numbered, may be intended to provide the factual

26   allegations supporting the claim of IIED.  (<u>Id.</u> at 34.)  The Court liberally construes
     the Complaint in this manner and refers to the IIED claim as Claim 12 and the

27   declaratory relief request as Claim 13.

28

1    in its jurisdictional section—e.g., 42 U.S.C. § 1988, the Fair Debt Collection

2    Practices Act, conversion, and invasion of privacy (see Compl. at 3)—these

3    theories are not listed in the Complaint's table of contents (see id. at 2) or as

4    numbered claims.  It thus appears that Plaintiff did not intend to bring them as

5    separate claims, since she has not explained what (if any) factual allegations are

6    intended to support these theories.  See Bruns, 122 F.3d at 1257 ("[A] liberal

7    interpretation of a civil rights complaint may not supply essential elements of the

8    claim that were not initially pled.").

9    **C.**    **Facts Alleged in the Complaint and Subject to Judicial Notice**

10        **1.**    **Origins of the Parties' Claimed Property Rights**

11        In 2010, the City vacated by resolution a pedestrian walkway located

12    between 732 Harding (Plaintiff's property) and 716 Harding.  (Compl. at 54, 63,

13    72.)[2]  The walkway is 10 feet wide; 5 feet of it were added to the 716 Harding

14    parcel, and 5 feet were added to the 732 Harding parcel.  (Id. at 72 [October 2019

15    letter to the Neighbors from Defendant Craig A. Beck, the City Director of Public

16    Works].)

17        Plaintiff spoke with the then-owner of 716 Harding, who "agreed to

18    relinquish his rights and share of the domain land (alley land) to [Plaintiff] as part

19    of the verbal agreement for [Plaintiff] to build and improve the land.  He agreed to

20    give the land to [Plaintiff] since the small piece of land did not add value to his

21    property but would increase his financial liability."  (Id. at 63.)  Plaintiff used the

22    area as a driveway and built a shed; a block wall was also built along the edge of

23    the walkway such that all 10 feet of its width are on the side of Plaintiff's property,

24    732 Harding.  (Id. at 23 [describing wall], 55 [photos].)

25    _____

26    [2] All docket page citations refer to the pagination imposed by the Court's electronic
filing system.  When quoting from Plaintiff's pro se filings, the Court has amended

27    typographical errors if Plaintiff's meaning is clear.

28

1    In 2012, the Neighbors purchased 716 Harding.  (Id. at 63.)

2       **2.    Initial Discussions about the Property and Prior Federal Action by**

3          **Plaintiff (2017)**

4       "[S]ometime around September 2017," one of the Neighbors, Oum,

5    "contacted [Plaintiff] with a notice to remove all [her] stuffs and cars from the land.

6    [Oum and Plaintiff] discussed about the land situation and [Plaintiff's]

7    disagreement with their motive.  No settlement agreement was concluded."

8    (Compl. at 63.)

9       In November 2017, Plaintiff filed a lawsuit against the Neighbors in this

10   Court concerning the ownership of the alley.  Ho v. Oum, 2:17-cv-8127-GW-AGRx

11   (C.D. Cal. Nov. 7, 2017), Dkt. 1 at 7.  Plaintiff alleged that, in August 2017, the

12   Neighbors "sent a letter threatening to violate [her] privacy by building a fence on

13   [her] property" and told her that "if [she] did not sign a tenant/landlord agreement

14   with them that they would take [her] to court and take" the disputed property.  Id.,

15   Dkt. 1 at 5.  Just as in the present action, Plaintiff argued that she owned the land by

16   virtue of adverse possession, and that the Neighbors had concocted "a scheme to

17   extort, defraud, and harass Plaintiff into surrendering the property to them" by

18   "making false claims and negligent misrepresentations to ownership of the

19   property…."  Id., Dkt. 1 at 7, 9.

20      In May 2018, this Court dismissed Plaintiff's action for lack of federal

21   subject matter jurisdiction, finding that there was no diversity jurisdiction and that

22   her claim under 28 U.S.C. § 1337 (the only federal statute she invoked) was

23   "patently without merit."  Id., Dkt. 52.  The Court noted, "Plaintiff may attempt to

24   re-file her action in state court or any other court properly having jurisdiction over

25   the subject matter."  Id. at 2.

26      **3.    Visit by Unnamed Surveyor (July 2019)**

27      On July 8, 2019, "a man … entered [Plaintiff's] backyard."  (Id. at 23.)  He

28   told Plaintiff that he "was licensed from the state to conduct a survey."  (Id. at 62.)

8

He was carrying what appeared to be surveyor tools.  (<u>See</u> <u>id.</u> at 56 [Ex. 2, photo of the man taken by Plaintiff].)  He "would not leave when asked to leave," "insisted that it was not [Plaintiff's] property that he was standing on," "jeered and sneered at [her]," and "accus[ed] [her] of trespassing."  (<u>Id.</u> at 23, 62.)  Plaintiff "told him that he had invaded [her] privacy…."  (<u>Id.</u> at 62.)

After Plaintiff called 911, "he climbed the fence and exited [the backyard] before the police officer arrived to the scene."  (<u>Id.</u> at 23, 62.)  It appears that he was still in the vicinity, however, because Plaintiff alleges that an "officer named Rudy mediated the altercation between the two parties."  (<u>Id.</u> at 62.)

Plaintiff alleges that the Neighbors "sent [the] man."  (<u>Id.</u> at 62.)

**4.      Initial Letter from the Neighbors' Attorney (July 2019)**

On July 12, 2019, the Neighbors' Attorney sent Plaintiff a letter on the Neighbors' behalf, informing Plaintiff that she was trespassing on "the east half portion of the vacant alley of the Subject Property" and that the Neighbors were planning to build a fence on their portion of the alley; the Neighbors' Attorney demanded that Plaintiff "remove [her] belongings, if any, from the Subject Property…."  (<u>Id.</u> at 23, 57-58.)

On August 1, 2019, Plaintiff responded by disputing the Neighbor Defendants' ownership of the property and threatening to have "a nice surprise waiting if you choose to trespass on my property."  (<u>Id.</u> at 24, 60.)

**5.      Visit by the LBPD (August 2019)**

On August 21, 2019, the LBPD arrived at Plaintiff's property "and ordered … everyone in [Plaintiff's] property to move their car from the property or the vehicles [would] get towed."  (<u>Id.</u> at 11, 24.)  Plaintiff was not home when the LPBD initially arrived; she learned of this via texts and phone calls from her roommates.  (<u>Id.</u> at 61.)  When [Plaintiff] arrived at the property, "There was no police [sic].  [Plaintiff] saw [Oum, one of the Neighbors] in [her] front yard. [Plaintiff] walked up to ask her.  She turned away and speeded straight to her front

1  door." (Id. at 61.)  Plaintiff "saw about 5 contractors at [the Neighbors'] house,"

2  who Plaintiff "told … to keep off [Plaintiff's] property," and she also observed the

3  other Neighbor, Pho, "climbing the wall to look into [Plaintiff's] backyard." (Id. at

4  61.)

5       LBPD Officer R. Mohagen (not named as a Defendant in this action) later

6  returned with a tow truck. (Id. at 61.)  He told Plaintiff that her neighbor, not the

7  LBPD, was towing her car and that he was simply there "to keep the peace." (Id. at

8  61.)  Plaintiff told him that she owned the land because she had "been [t]here for

9  more than 10 years and ha[d] been in use of the land." (Id.)  Officer Mohagen

10  responded, "They['ve] got paper [showing] that it is their land." (Id. at 61.)

11       After Plaintiff called the LBPD, the department sent Sergeant J. Gludt (not

12  named as a Defendant in this action) to the property. (Id. at 61.)  Plaintiff again

13  told Sergeant Gludt why she believed she owned the property. (Id.)  Sergeant Gludt

14  "told [her] to move [her] car or they [would] arrest [her] for obstructing the towing

15  company…." (Id.)  Plaintiff moved her car. (Id.)

16       **6.    Installation of Surveillance Camera (August 2019)**

17       Sometime in late August 2019, the Neighbors "installed a surveillance

18  camera" that "pointed at [Plaintiff's] shed and driveway." (Id. at 24-25; id. at 69

19  [Ex. 7, alleged photos of the camera].)  In October 2019, along with further

20  correspondence about the property dispute (discussed further below), the

21  Neighbor's Attorney emailed Plaintiff photos from the camera. (Id. at 25, 70-71

22  [Ex. 8].)

23       **7.    Plaintiff's Request for a Restraining Order in the State Court**

24            **(August 2019)**

25       On August 28, 2019, Plaintiff "filed a Civil Harassment Restraining order

26  [request] against" the Neighbors in state court, "but they evaded service by hiding

27

28

out in Canada."  (Id. at 24.)³  She asked for an order to prevent the Neighbors and their agents from "stalking," "spying," and "harassing," her or "the people in [her] household," "invading their privacy, tampering with their personal belonging[s], threatening to remove their stuffs, [or] calling [the] police dispatcher to tow their cars off [the] property."  (Id. at 64.)

The state court denied the request, noting, "This is a property dispute.  The restraining order, even if granted, will not determine the ownership of the disputed property."  (Id. at 66.)

**8.    Correspondence between Beck, the Neighbor Defendants, and Plaintiff (October 2019)**

On October 7, 2019, Defendant Beck, the City's Director of Public Works, sent the Neighbors a letter stating that: (a) the City had determined that half of the alley belonged to the Neighbors; (b) the "conditions of the vacation require the adjacent property owners 'to construct, at their expense, a concrete block wall down the centerlines of the alley'"; and (c) the Neighbors had obtained a permit to do so. (Id. at 72.)  He recommended that the Neighbors and Plaintiff "discuss options with legal counsel to either settle the dispute, mediate, [or] evict," and that "[o]nce an outcome [was] reached," the City would "work with you to provide a Police Officer and City Surveyor at the time of construction to ensure a safe work environment and that the fence/wall is constructed in the appropriate location to avoid further disputes."  (Id. at 73.)

The Neighbors' Attorney forwarded this letter to Plaintiff on October 11, 2019.  (Id. at 25 [citing Ex. 10].)  She demanded that Plaintiff "cease and desist" the encroachment on to the Neighbors' property, and she announced the Neighbors'

---

³ In the prior federal action in this Court, Neighbor Oum filed a declaration stating that she is a citizen of the United States who resides in Canada.  (Dkt. 22-6.)  The Court relied on this declaration to find a lack of diversity jurisdiction.

1  intent to demolish the existing block wall and build a new wall down the centerline

2  of the walkway.  (Id. at 74-75 [Ex. 10].)

3      On October 21, 2019, Plaintiff responded that the Neighbors should "stop

4  harassing [her] and attempting to do illegal eviction," and indicated that she was

5  serving the "Civil Harassment lawsuit order" on the Neighbors' Attorney.  (Id. at

6  76.)

7      **9.     Visit by Defendants Sorrero and Melkonian (October 2019)**

8      On October 25, 2019, Defendants Jeffrey Sorrero and Diko Melkonian,

9  representatives of the City Public Works Department, visited Plaintiff's property.

10  (Id. at 26.)  Defendant Sorrero told Plaintiff he was there "to investigate the

11  situation of the land and the building of the wall structure…"  (Id. at 26.)  Plaintiff

12  told him that the Neighbors needed to get a court order to validly claim the land.

13  (Id.)  Defendant Sorrero told her:

14          Litigation is not necessary because YOU LOSE.  They paid taxes on

15          this land according to the tax assessor record. … They did a land

16          surveyor [sic] and the red dot is the property line.  Keep on your side

17          of the property. … The police [are] coming out next week to supervise

18          the building of the wall.

19  (Id.)  Plaintiff insisted that she had paid the taxes on the disputed portion and

20  declared that she had "no choice but to sue."  (Id. at 27.)  Defendant Sorrero

21  responded, "But you do have a choice.  According to the tax assessor, this is your

22  side and that [is] their side."  (Id.)  After Plaintiff asked for his business card, he

23  "refused" and "quickly walked away with the other man."  (Id.)  Plaintiff "followed

24  him," and Defendant Sorrero said, "Do not film me! Do not record me!"  (Id.; see

25  also id. at 77 [Ex. 12, photo Plaintiff took of these Defendants].)  It appears that

26  Defendant Melkonian did not say anything during this encounter.

27      **10.    Notices from the Neighbor Defendants (October 2019)**

28      On October 29, 2019, the Neighbor Defendants "sent an email [to Plaintiff]

and posted on [her] door threaten[ing] notices to demolish [her] wall and to remove all [her] stuffs on [her] private property." (Id. at 62.)[4]

**D.    Federal Claims**

**1.    Claim 1 Under § 1983 Should Be Dismissed Without Leave to Amend as to the Neighbor Defendants and With Leave to Amend as to the City Defendants.**

Section 1983 creates a private right of action for a plaintiff who has been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a defendant who was acting "under color of any statute, ordinance, regulation, custom, or usage of any State…."   42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege a violation of the U.S. Constitution or another federal law; "state law violations do not, on their own, give rise to liability under § 1983. See Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998).  The plaintiff must also allege that the defendant was acting under color of state law, i.e., "exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Polk Cty. v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).  Thus, a plaintiff generally cannot sue a private person under § 1983.  See generally Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011) (noting that courts "start with the presumption that conduct by private actors is not state action").

Here, Claim 1 of the Complaint alleges that Defendants violated Plaintiff's right to own and use her property, as well as her right to invoke the protection of the LBPD and her "right to be free from fraud and harassment." (Compl. at 10.) She contends that Defendants violated these rights by "participat[ing] in a

---

[4] According to Plaintiff's TRO filings, the wall was demolished in November 2019. (See Dkt. 19-1; Dkt. 21 at 13.)

1  conspiracy to steal and harass Plaintiff by entering the property without Plaintiff's

2  permission," "taking pictures," "doing unlawful activities (such as spying),"

3  "intimidating Plaintiff [by stating] that the 'police will come and force you to give

4  up this property,'" and sending "harassing fraudulent letters."  (Id.)

5        The § 1983 claims against the Neighbor Defendants fail because the

6  Complaint does not allege any facts suggesting that they were acting under color of

7  law.  The fact that the Neighbors invoked the assistance of the City Defendants to

8  enforce what the Neighbors claimed to be their property rights does not mean that

9  the Neighbors were acting under color of law for purposes of § 1983.  See Harper v.

10 Fed. Land Bank of Spokane, 878 F.2d 1172, 1178 (9th Cir. 1989) ("the fact that a

11 state permits the use of foreclosure procedures and subsequent sheriff sales as the

12 execution of a judgment is not sufficient to constitute state action"); Vachon v.

13 Reverse Mortg. Sols., Inc., No. 16-02419, 2017 WL 6628103 at *10, 2017 U.S.

14 Dist. LEXIS 212818 at *21 (C.D. Cal. Aug. 11, 2017) ("Plaintiff cannot allege that

15 Defendants are state actors merely because they utilized foreclosure and eviction

16 procedures made available by the state."), R&R adopted, 2017 WL 6626649, 2017

17 U.S. Dist. LEXIS 212805 (C.D. Cal. Dec. 28, 2017).

18       In contrast, the allegations against the City Defendants show that they were

19 acting under color of law.  Nevertheless, the § 1983 claims against them fail for

20 different reasons.

21       Initially, the Court notes that it is unclear what constitutional or other *federal*

22 rights Plaintiff is claiming that the City Defendants violated.  Although Claim 1

23 lists certain civil rights (see Compl. at 10, citing "the right to be left alone while

24 enjoying private property," "the right to own property by adverse possession," "the

25 right to be free from fraud and harassment"), the Complaint does not explain what

26 provision of the federal constitution and/or federal statutes guarantees these rights.

27 Essentially, Plaintiff alleges that the City Defendants disagreed with her about who

28 owned the disputed property and favored the Neighbors' claim over hers.  Liberally

14

1    construing the pro se Complaint, Plaintiff appears to be attempting to allege a

2    violation of her right to equal protection of the laws under the Fourteenth

3    Amendment.  The Complaint fails to state an equal protection claim, however.

4         The communications from the City Defendants demonstrate that they had a

5    rational basis for believing that the Neighbors were the owners of the property.  The

6    Complaint therefore does not state a claim under a theory that Plaintiff was

7    "intentionally treated differently from others similarly situated and that there is no

8    rational basis for the difference in treatment."  Village of Willowbrook v. Olech,

9    528 U.S. 562, 564 (2000).

10        The Complaint also fails to state a claim under a theory that she was

11   discriminated against because of her membership in a protected class.  See Serrano

12   v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).  The Complaint does allege (under

13   other Claims) that Plaintiff is Asian and that Defendants' "conspiracy" to deprive

14   her of her property was "racially motivated" and designed to interfere with her

15   ability to own property "as is enjoyed by white citizens…."  (Compl. at 11, 13.)

16   However, the Complaint fails to allege any facts to support the conclusory assertion

17   that the City Defendants' actions were racially motivated.  Plaintiff does not allege,

18   for example, that the Neighbors are white[5] or that any Defendants made racially

19   derogatory comments towards her.  Moreover, the written correspondence from

20   Defendant Beck and the comments made by City employees who visited the

21   property—even liberally construed in Plaintiff's favor—suggest race-neutral

22   reasons for the City Defendants' actions.

23        Because Plaintiff may be able to allege further facts under Claim 1 that

24   would demonstrate a violation of her constitutional rights by the City Defendants,

25   this claim should be dismissed with leave to amend as to them.  However, granting

26

27   [5] The Neighbor s' motion to dismiss asserts that they are also Asian.  (Dkt. 22 at
     16.)
28

leave to amend as to the Neighbor Defendants would be futile.

**2.    Claim 2 Under § 1985 Should Be Dismissed With Leave to Amend.**

Section 1985 contains three subsections, and Claim 2 appears to be invoking subsections (2) and (3).

**a.    Section 1985(2): Access to Courts**

Section 1985(2) forbids interference with a plaintiff's access to federal and state courts.  The Complaint alleges that Defendants interfered with Plaintiff's "civil right to bring lawsuits for disputes in real property without interference by third parties[,] employees[,] or the police department."  (Compl. at 11; see also id. at 13 [under Claim 4, alleging that "the City of Long Beach Public Works has acted as judge, jury, and executioner against Plaintiff and have [sic] deprived Plaintiff of valuable civil rights to redress any rights in a court of competent jurisdiction"].)

"Section 1985(2) contains two clauses that give rise to separate causes of action."  Portman v. Cty. of Santa Clara, 995 F.2d 898, 908 (9th Cir. 1993).

> The first clause concerns access to *federal* courts, giving rise to a cause of action where ["]two or more persons in any State or Territory conspire [A] to deter, by force, intimidation or threat, any party or witness *in any court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or [B] *to injure such party or witness in his person or property on account of his having so attended or testified*….["]

Id. at 908-09.  The Complaint fails to state a claim under this first clause of § 1985(2) because it does not allege that any of Defendants' actions were motivated by a desire to deter her from filing the present federal lawsuit or to retaliate against her for having filed the prior federal lawsuit.[6]

---

[6] Additionally, to the extent § 1985(2) requires Defendants to have acted to deter Plaintiff from or retaliate against her for attending or testifying at *an actual proceeding*, then Plaintiff cannot state a claim, because the prior action was

1
2
3
4
5
6

> The second clause [of § 1985(2)] concerns access to *state or territorial* courts, giving rise to a cause of action where ["]two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice *in any State or Territory,* with intent to deny to any citizen *the equal protection of the laws*....["]

7   Portman, 995 F.2d at 909.  "It is well-settled that the 'equal protection' language of

8   the second clause of section 1985(2) [requires] an allegation of class-based animus

9   for the statement of a claim under that clause."  Id.  The Complaint fails to state a

10  claim under this clause because, as discussed above, it alleges no facts suggesting

11  that Defendants' actions were motivated by class-based animus.

12              **a.    Section 1985(3): Conspiracy**

13       "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to

14  deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of

15  the conspiracy and (3) a resulting injury."  Addisu v. Fred Meyer, Inc., 198 F.3d

16  1130, 1141 (9th Cir. 2000).  "[T]o prove a private conspiracy in violation of the

17  first clause of § 1985(3), a plaintiff must show, inter alia, … that 'some racial, or

18  perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the

19  conspirators' action.'"  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263,

20  267-68 (1993) (footnote and citation omitted).

21       The Complaint alleges that Defendants "conspired among themselves to

22  interfere with plaintiff(s) civil rights…."  (Compl. at 11.)  However, the Complaint

23  fails to state a claim under this subsection because, as discussed above, the

24  Complaint does not allege any facts suggesting that Defendants discriminated

25

26  dismissed without any such proceedings.  See Wright v. Brown, 67 F.3d 311, at *4

27  (9th Cir. 1995) (table); Portman, 995 F.2d at 910 (noting circuit split on this issue and declining to take a side).

28

17

1   against Plaintiff on the basis of race or some other protected class.

2        Because Plaintiff may be able to plead additional facts that would allow her

3   to state a claim under Section 1985, Claim 2 should be dismissed with leave to

4   amend.

5       **3.**    **Claim 3 Under § 1986 Should Be Dismissed With Leave to Amend.**

6        "Section 1986 imposes liability on every person who knows of an impending

7   violation of section 1985 but neglects or refuses to prevent the violation.  A claim

8   can be stated under section 1986 only if the complaint contains a valid claim under

9   section 1985." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th

10  Cir. 1988).  Because the Complaint fails to state a claim under § 1985, as discussed

11  above, it also fails to state a claim under § 1986.

12      **4.**    **Claim 4 Under § 1981 Should Be Dismissed With Leave to Amend.**

13       In Claim 4, Plaintiff alleges that, by taking the Neighbors' side in the

14  property dispute "rather than let[ting] the issue proceed before a court of competent

15  jurisdiction," the City Defendants "discriminate[d] against the Plaintiff and g[a]ve

16  preferential treatment to" the Neighbors, "who had previously advised [Defendant

17  Beck] that they wanted to take the property for personal use." (Compl. at 13.)  She

18  alleges that this: (a) deprived her of the "same right to sue in court and give

19  evidence and to enjoy the full rights to the property"; and (b) "interfered with [her]

20  pending contract with third parties to develop the property and to enjoy the property

21  without being harassed by the City employees…." (Id.)

22       Section 1981 provides in relevant part:

23       All persons within the jurisdiction of the United States shall have the

24       same right in every State and Territory to make and enforce contracts,

25       to sue, be parties, give evidence, and to the full and equal benefit of

26       all laws and proceedings for the security of persons and property as is

27       enjoyed by white citizens….

28  42 U.S.C. § 1981(a).  The Complaint fails to state a claim under this provision for

18

1    several reasons.

2        First, "Although § 1981 does not itself use the word 'race,' the Court has

3    construed the section to forbid all 'racial' discrimination in the making of private as

4    well as public contracts." Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609

5    (1987); see also Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003) (noting that

6    § 1981 was "meant, by its broad terms, to proscribe discrimination in the making or

7    enforcement of contracts against, or in favor of, any race"). As discussed above,

8    the Complaint alleges no facts suggesting that Defendants' actions were motivated

9    by class-based animus.

10        Second, the Complaint fails to demonstrate that Defendants interfered with

11    Plaintiff's right "to sue." The City Defendants simply expressed their opinion that

12    the disputed property belonged to the Neighbors under the applicable state law.

13    The Complaint does not explain how this interfered with or hindered Plaintiff's

14    right to have the state courts adjudicate this issue. Plaintiff could have filed an

15    action in the state courts to quiet title in her favor, i.e., the same claim she raises in

16    Claim 7 of the present lawsuit. Indeed, Defendants' actions did not prevent or deter

17    her from seeking a restraining order against the Neighbors in the state courts in

18    August 2019 (see Compl. at 24, 64, 66) or from filing the present federal action

19    against the Neighbors and the City Defendants.

20        Third, the Complaint does not allege sufficient facts to demonstrate that

21    Defendants interfered with Plaintiff's right "to make and enforce contracts"

22    between Plaintiff unidentified third parties. The Complaint does not explain in

23    what way Plaintiff was planning "to develop the property," whether such a contract

24    was actually entered, and/or why it was never entered or revoked. (Compl. at 13.)

25        Because Plaintiff may be able to plead additional facts that would state a

26    claim for relief under § 1981, this claim should be dismissed with leave to amend.

27

28

5.      **Claim 5 Under § 1982 Should be Dismissed Without Leave to Amend.**

Under Claim 5, Plaintiff alleges that Defendants interfered with her rights: (a) "to own property as enjoyed by white citizens"; (b) "to lease, hold, and convey real property such as the same as enjoyed by white citizens"; and (c) "to litigate any dispute relative to the property." (Compl. at 14.) She alleges that they did this "by writing a letter that would award the property to [the Neighbors] and which would trample on the equal rights of Plaintiff to litigate the issue with regards to the property." (Id.)

42 U.S.C. § 1982 provides, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." This statute "bars all racial discrimination, private as well as public, in the sale or rental of property…." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968). To state a prima facie case of racial discrimination under this statute, the plaintiff must allege: "(1) that he or she is a member of a racial minority; (2) that he or she applied for and was qualified to rent or purchase certain property or housing; (3) that he or she was rejected; and (4) that the housing or rental opportunity remained available thereafter." Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 551 (9th Cir. 1980).

Plaintiff does not allege that Defendants prevented her from selling or renting property. Rather, her dispute with Defendants concerns the boundary line of property that she already owns and where she already resides. Accordingly, Claim 5 should be dismissed with prejudice and without leave to amend, because § 1982 has no application to the present situation and granting leave to amend would be futile.

20

1    **6.      Claim 8 Under RICO Should Be Dismissed Without Leave to**
2    **Amend.**

3         "RICO is founded on the concept of racketeering activity.  The statute
4    defines 'racketeering activity' to encompass dozens of state and federal offenses,
5    known in RICO parlance as predicates."  <u>RJR Nabisco, Inc. v. European Cmty.</u>, --
6    U.S. --, 136 S. Ct. 2090, 2096 (2016); <u>see also</u> 18 U.S.C. § 1961(1) (definition of
7    racketeering activity).  The elements of a civil RICO claim are: "(1) conduct (2) of
8    an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate
9    acts') (5) causing injury to the plaintiff's 'business or property.'"  <u>Grimmett v.</u>
10   <u>Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996).

11        "Where … the racketeering activity alleged is fraud, … the heightened
12   pleading requirements of Rule 9(b) apply to the predicate acts."  <u>Shaw v. Nissan N.</u>
13   <u>Am., Inc.</u>, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (citing <u>Moore v. Kayport</u>
14   <u>Package Express</u>, 885 F.2d 531 (9th Cir. 1989)).  "Allegations of fraud must be
15   'specific enough to give defendants notice of the particular misconduct,' thereby
16   enabling them to 'defend against the charge and not just deny that they have done
17   anything wrong.'"  <u>Id.</u> (quoting <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097,
18   1106 (9th Cir. 2003)).

19        In Claim 8, the Complaint alleges that Defendants have committed the
20   predicate acts of using "fraudulent documents … to illegally [initiate] eviction
21   proceedings…."  (Compl. at 22.)  Although some types of fraud are predicate acts
22   under RICO, the Complaint does not demonstrate that Defendants' acts were
23   fraudulent.  Plaintiff's contention that the letters sent by Defendants are
24   "fraudulent" is based solely on her disagreement with Defendants' interpretation of
25   the relevant state property laws.  This fails to demonstrate that Defendants
26   committed fraud or any other predicate act for RICO purposes.

27        This claim should be dismissed with prejudice and without leave to amend,
28   because amendment would be futile.

**7.      Claim 13 Under the Declaratory Judgment Act Should Not Be Dismissed at This Time.**

Defendants argue that this claim should be dismissed because it is not an independent claim, and the Complaint fails to state any other valid claim for relief. (Dkt. 22 at 22; Dkt. 25 at 11.)  See generally Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) ("[T]he operation of the Declaratory Judgment Act is procedural only."); California Shock Trauma Air Rescue v. State Comp. Ins. Fund, 636 F.3d 538, 544 (9th Cir. 2011) (noting "the Skelly Oil rule … that Declaratory Judgment Act actions are procedural claims, as opposed to substantive ones that would confer jurisdiction").  Because the Court is recommending that some of Plaintiff's claims be dismissed with leave to amend, dismissal of the request for a declaratory judgment is inappropriate at this time.

**E.      State Law Claims**

In addition to the federal claims discussed above, the Complaint brings multiple claims arising under state law, including for fraud, civil conspiracy, unjust enrichment, and to quiet title.  (Compl. at 15-21, 30-32, 34.)  Plaintiff asserts that this Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367 because it has federal question jurisdiction over the related federal claims.  (Compl. at 3.)

Since the Complaint does not currently state a valid claim for relief under any of the federal theories cited therein, the Court declines to consider the viability of Plaintiff's state law claims at this time.  In the absence of a valid federal claim, this Court may decline to exercise jurisdiction of the state law claims, which Plaintiff could raise in the state courts.  See generally 28 U.S.C. § 1367(c)(3); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997).  If Plaintiff later states a valid claim for relief under federal law in an amended complaint, the Court may consider the viability of her state law claims as raised in any future motions to dismiss.

1
2
3

### III.

### THE NEIGHBOR DEFENDANTS'

### ANTI-SLAPP MOTION

4      The Neighbor Defendants' motion argues that the entire Complaint should be

5 stricken under California's anti-SLAPP statute because "mixed causes of action are

6 subject to [the] anti-SLAPP" statute and "Plaintiff predicates every one of her

7 claims on protected activity." (Dkt. 22 at 22, 25, 29; see also Dkt. 35 at 3 [reply].)

8 They argue, "Treating not just the state law causes of action but also the federal

9 causes of action as falling under California's anti-SLAPP protection is consistent

10 with federal law…." (Id. at 4.)

11      The Neighbor Defendants rely on United States v. Lockheed Missiles and

12 Space Co., Inc., 190 F.3d 963 (9th Cir. 1999), cert. denied, 530 U.S. 1203 (2000)

13 for the proposition that they can bring an anti-SLAPP motion in federal court.

14 (Dkt. 35 at 3.)   Yet Lockheed held only that the anti-SLAPP statute applies "to

15 state law claims brought in federal court." Bulletin Displays, LLC v. Regency

16 Outdoor Advert., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (emphasis

17 added). Subsequently, the Ninth Circuit has held that the anti-SLAPP statute "does

18 not apply to federal question claims in federal court because such application would

19 frustrate substantive federal rights." Id. (citing In re Bah, 321 B.R. 41, 46 (9th Cir.

20 BAP 2005)). In other words, in federal court, "California's anti-SLAPP statute

21 applies only to state law claims." Nunag v. East Baton Rouge Parish School Bd.,

22 711 F.3d 1136, 1141 (9th Cir. 2013) (citing Hilton v. Hallmark Cards, 580 F.3d

23 874, 881 (9th Cir. 2009)).

24      Additionally, the Ninth Circuit has "cautioned that '[p]rocedural state laws

25 are not used in federal court if to do so would result in a direct collision with a

26 Federal Rule of Civil Procedure,'" and "granting a defendant's anti-SLAPP motion

27 to strike a plaintiff's initial complaint without granting the plaintiff leave to amend

28 would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal

1   amendment." <u>Verizon Delaware, Inc. v. Covad Commc'ns Co.</u>, 377 F.3d 1081,

2   1091 (9th Cir. 2004) (citation omitted).  The court noted, "[T]he purpose of the

3   anti-SLAPP statute, the early dismissal of meritless claims, would still be served if

4   plaintiffs eliminated the offending claims from their original complaint.  If the

5   offending claims remain in the first amended complaint, the anti-SLAPP remedies

6   remain available to defendants." <u>Id.</u>  Thus, where a district court dismisses a

7   complaint with leave to amend, it is appropriate to deny the defendants' anti-

8   SLAPP motion without prejudice.  <u>See</u>, <u>e.g.</u>, <u>Ramachandran v. City of Los Altos</u>,

9   359 F. Supp. 3d 801, 819-21 (N.D. Cal. 2019).

10      As discussed above, the recommendation regarding the parties' motions to

11   dismiss is that: (a) most of Plaintiffs' federal claims should be dismissed with leave

12   to amend; and (b) the viability of her state law claims (which are the only claims

13   subject to the anti-SLAPP motion) should be addressed in a future order, if

14   necessary.  Accordingly, the Court denies the anti-SLAPP motion without prejudice

15   at this time.  The Neighbor Defendants may renew their motion if Plaintiff includes

16   similar claims in a First Amended Complaint.

17                                    **IV.**

18                          **RECOMMENDATION**

19      IT IS THEREFORE RECOMMENDED that the District Court issue an

20   Order:

21      (1)   approving and accepting this R&R;

22      (2)   granting in part and denying in part Defendants' motions to dismiss for

23            failure to state a claim (Dkt. 22, 23, 25);

24      (3)   denying the Neighbor Defendants' anti-SLAPP motion without

25            prejudice;

26      (4)   dismissing Claim 1 (as to the Neighbor Defendants), Claim 5, and

27            Claim 8 with prejudice and without leave to amend;

28      (5)   dismissing Claim 1 (as to the City Defendants), Claim 2, Claim 3, and

Claim 4 without prejudice and with leave to amend; and

(6)    directing that leave to amend is limited to adding facts supporting the claims pled in the initial Complaint, and it does not include leave to add new Defendants or claims.

DATED: <u>January 15, 2020</u>

_____
KAREN E. SCOTT
United States Magistrate Judge

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to timely file objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any objections will be reviewed by the District Judge whose initials appear in the case docket number.